UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>v.<br><br>ABLE TIME, INC.,<br><br>        Defendant. | No. CV 04-2695 CBM (JWJx)<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

The matter before the Court, the Honorable Consuelo B. Marshall presiding, is the bench trial held on Defendant Able Time, Inc.'s ("Able Time") affirmative defenses.[1] Upon consideration of the testimony and evidence received, and the Court's evaluation of the demeanor and credibility of the witnesses, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I. Findings of Fact

The following facts are not disputed.

---

[1] Prior to trial, the Court invited briefing on "arguments regarding the constitutionality of applicable statutes and any other arguments not requiring factual testimony." [Docket No. 248]. In response, Able Time filed a Motion for Summary Judgment as to Defendant's Counterclaim ("Counterclaim Motion") [Docket No. 259], and a Motion for Summary Judgment as to whether there is a Seizure on Which to Base Penalty under the Statute to form the basis of a Civil Fine under 19 U.S.C. § 1526(f) when Customs has Remitted the Initial Seizure ("Remission Motion"). [Docket No. 260]. The Court considers the legal arguments in Able Time's motions for purposes of the Court's conclusions of law. [Docket No. 121].

1

### A. The Seizure of the "Counterfeit" Watches

On April 19, 1999, Customs "detained," pursuant to the Tariff Act, a shipment of 2,794 watches, bearing the word "TOMMY", being imported by Able Time into the United States at Los Angeles International Airport. [Docket No. 159].

The word "TOMMY" is a registered trademark (U.S. Patent and Trademark Office registration no. 1998783, dated January 27, 1997), owned by Tommy Hilfiger Licensing, Inc., (now known as Tommy Hilfiger Licensing LLC), ("Tommy Hilfiger"), for use in Class-3 products such as cosmetics, cologne products, after-shave products, deodorants and soaps for personal use. *Id.* Tommy Hilfiger never gave Able Time permission to use its word mark on any product. *Id.*

Customs "examined" the watches and "compared" the "TOMMY" mark appearing on the seized watches to the word mark registered and recorded by Tommy Hilfiger Licensing, Inc. *Id.* In May 1999 Customs concluded that the "TOMMY" appearing on the seized watches was substantially indistinguishable or identical to Tommy Hilfiger's word mark. *Id.*

At the time, Tommy Hilfiger did not make watches, and "TOMMY" was not a registered trademark for use on watches. *Id.* Tommy Hilfiger did not apply for a trademark for use on watches until November 1999. *Id.*

### B. The Forfeiture Action

The Government initiated a forfeiture action on November 3, 2000. The case was assigned to the Honorable Robert M. Takasugi. *See related case of United States v. 2,164 Watches, et al.*, 00-11781 RMT (JWJx).

On December 4, 2001, Able Time filed a motion for judgment on the pleadings in the forfeiture action, arguing that Customs' unreasonable delay in arresting the *res* deprived the court of subject matter jurisdiction. *See id.* at Docket No. 38. Judge Takasugi agreed and granted the motion. *See id.* at Docket No. 48.

On April 28, 2004, the Ninth Circuit decided in *United States v. 2,164 Watches More or Less, etc.*, 366 F.3d 767, 769 (9th Cir. 2004), that "dismissal

without prejudice, rather than judgment on the pleadings, would have been the appropriate action to take. . . ." The Circuit remanded the case to Judge Takasugi to consider the prejudicial effect the untimely service had on Able Time, and whether the action should have instead been dismissed without prejudice on account of the untimely service. *See id.*

On remand on September 9, 2004, Judge Takasugi found that Able Time was prejudiced by the untimely service and dismissed the forfeiture action without prejudice. *See* Forfeiture Action, Docket No. 77. By the time Judge Takasugi entered the dismissal order, the five year statute of limitations had expired. Accordingly, the Government could not re-file its forfeiture action.

At no point in the forfeiture action did the Government file a motion for an issuance of a certificate of probable cause pursuant to 28 U.S.C. § 2465(a)(2). Nor did Judge Takasugi ever make any findings with respect to whether the Government had probable cause to seize the watches.

On or about January 19, 2005, the Government remitted the seizure and returned all but twelve of the seized watches. [Docket No. 159].

### C. The Present Penalty Action

On April 16, 2004, the Government filed this action for penalties, pursuant to 19 U.S.C. § 1526(f), for $32,940, which was also assigned to Judge Takasugi. [Docket No. 1]. On May 28, 2004, Able Time filed a Counterclaim for a Declaratory Judgment arguing Section 1526(f) of the Tariff Act is unconstitutional because it permits Customs to collect a penalty without a preliminary finding that the goods are counterfeit. [Docket No. 7].

Judge Takasugi granted a motion for summary judgment in favor of Able Time "because Tommy Hilfiger did not make watches at the time of the seizure, the watches imported by Able Time were not counterfeit, and the penalty imposed by Customs was unlawful." [Docket No. 91].

In *United States v. Able Time, Inc.*, 545 F.3d 824 (9th Cir. 2008), the Ninth

Circuit held that a mark on merchandise may be counterfeit even if the mark owner does not manufacture that type of merchandise at the time of the seizure. *Id.*

First, the Circuit rejected Able Time's argument that the penalty action was moot, reasoning, *see id.* at 828:

> This action is not moot because the civil penalty remedy is still available . . . Subsection (f) requires only that the merchandise be "seized under subsection (e)," which it was.
>
> If the forfeiture action in this case had been dismissed with prejudice, or if Able Time were to show that the seizure was otherwise invalid, then a civil penalty would not be appropriate. But the forfeiture action here was dismissed without prejudice, and Able Time has not shown that the seizure was unlawful. Accordingly, the civil penalty remedy is still available and the case is not moot.

Then the Circuit reversed the case and remanded it to this Court to:

> determine whether: (1) the mark on the watches is identical to or substantially indistinguishable from the registered mark pursuant to 15 U.S.C. § 1127; and (2) whether the offending mark copies or simulates the registered mark pursuant to 15 U.S.C. § 1124, which amounts to the traditional likelihood of confusion test for infringement.

*Id.* at 836.

The parties filed Cross-Motions for Summary Judgment. [Docket Nos. 125, 126]. The Court denied both Motions for Summary Judgment, finding the existence of material issues of fact. [Docket No. 159].

### D. The Trial

The Court held a four-day jury trial from June 8, 2010, to June 11, 2010. [Docket No. 237]. The jury returned a verdict in favor of the Government. [Docket No. 237]. The second phase of the trial, on Able Time's affirmative defenses, was held as a bench trial.

## II. Able Time's Counterclaim

Able Time seeks "a declaration from this Court that 19 U.S.C. § 1526(f) is unconstitutional because (1) the language of the statute is vague, and violates Due Process, because it empowers the United States to impose a civil penalty on the importation of merchandise that is seized at some point in time under 19 U.S.C. §

4

1526(e), regardless of the outcome of that seizure, and/or (2) the statute is vague with respect to the calculation of the penalty which allows the opportunity to impose an excessive fine." Counterclaim Motion at p. 8:13-20.

### A. The Statute

The statute at issue, 19 U.S.C. § 1526(f) provides:

(f) Civil penalties.
  (1) Any person who directs, assists financially or otherwise, or aids and abets the importation of merchandise for sale or public distribution that is seized under subsection (e) shall be subject to a civil fine.
  (2) For the first such seizure, the fine shall be not more than the value that the merchandise would have had if it were genuine, according to the manufacturer's suggested retail price, determined under regulations promulgated by the Secretary.

*****

  (4) The imposition of a fine under this subsection shall be within the discretion of the Customs Service, and shall be in addition to any other civil or criminal penalty or other remedy authorized by law.

19 U.S.C. § 1526(e) provides that:

Merchandise bearing a counterfeit mark . . . imported into the United States . . . shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws.

The Tariff Act incorporates the definition of the term counterfeit: "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

### B. The Statute is Not Unconstitutionally Vague

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Vague statutes are void for three reasons: "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Foti v. City of Menlo Park,* 146 F.3d 629,

638 (9th Cir. 1998) (citing *Granyned*, 408 at 108-09).

**1. The Statute is Not Vague on its Face**

A statute attacked as vague must be initially examined "on its face" rather than as applied. *United States v. Nat'l Dairy Product Corp.* 372 U.S. 29, 31. (1963). Challenges to a statute as vague on its face are permitted only in limited circumstances. *Schwartzmiller v. Gardner,* 752 F.2d 1341, 1346 (9th Cir. 1984) (citations omitted). "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v Mazurie*, 419 U.S. 544, 550 (1975) (citing *Nat'l Dairy Prods. Corp*, 372 U.S. 29). Because Able Time does not contend that the statute implicates its First Amendment rights, the facial challenge thus fails.

**2. The Statute is Not Vague as Applied**

"A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement." *United States v. Adams*, 343 F.3d 1024, 1035 (9th Cir. 2003) (quoting *Schwartzmiller*, 752 F.2d 1345). "Greater leeway is allowed when statutes are regulatory in nature and do not inhibit the exercise of constitutional rights, even if criminal penalties are involved." *United States v. $122,043.00 in U.S. Currency*, 792 F.2d 1470, 1477 (9th Cir. 1986) (citations omitted).

Able Time contends that the statute is unconstitutional as applied because "Customs imposed a civil penalty against Able Time even though Customs remitted (*i.e.*, cancelled) the seizure and was barred from forfeiting the watches." Counterclaim Motion at p. 4:19-21. However, the watches were remitted because, in the prior forfeiture action, process was not served on the watches in a timely manner. [Docket No. 159]. On appeal, the Ninth Circuit found that the "civil

penalty remedy is still available and the case is not moot." *Able Time*, 545 F.3d at 858. This Court previously held that the imposition of a civil penalty is appropriate if: "(1) the initial seizure was lawful; and (2) the watches bear a counterfeit mark." [Docket No. 159]. At trial, the Jury found for the Government on both issues. Thus, the statute is not being enforced against Able Time in an arbitrary or discriminatory manner.

Able Time further contends that the statute is vague because it permitted Customs and Border Patrol to calculate the penalty amount based on the domestic value of the watches. Counterclaim Motion at p. 17:3-10. However, the Ninth Circuit expressly upheld the use of domestic value in this case. *Able Time*, 545 F.3d at 831. The Circuit noted that the legislative history of § 1526(f)(2) "provides that the fine should be 'meted out at the discretion of the U.S. Customs Service, within the boundaries set out by Congress in the bill.'" *Id.* (citing S. Rep. No. 104-177, at 6 (1995)). The Circuit concluded that "Customs acted within its discretion when it used the 'domestic value' of the merchandise as an approximation in accordance with a Customs directive applicable in similar circumstances." *Able Time*, 545 F.3d at 831.

Able Time has not established that the statute failed to give adequate notice or that it invited arbitrary and discriminatory enforcement as to Able Time. Further, Able Time did not identify any specific language in the statute that is vague and failed to put Able Time on notice. The statute provides Customs with discretion to impose fines on persons who import counterfeit goods. The Ninth Circuit approved of the penalty calculation and the availability of a civil penalty in absence of a forfeiture. Thus, the Court finds the statute is constitutional as applied to Able Time.

### 3. The Fine is Not Excessive

The Tariff Act specifies that the fine must be *not more than* the manufacturer's suggested retail price that the merchandise would have if it were

genuine. *Able Time*, F.3d 545 at 831. "A fine is constitutionally excessive if it is 'grossly disproportional to the gravity of the defendant's offense.'" *Vasudeva v. United States*, 214 F.3d 1155, 1161 (9th Cir. 2000) (citing *United States v. Bajakajian*, 524 U.S. 321, 329 (1998)). The Ninth Circuit considers the following four factors in weighing the gravity of the defendant's offense: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." *United States v. 100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004) (citing *Bajakajian*, 524 U.S. at 337-40).

Able Time seeks a ruling that *any* penalty is unconstitutionally excessive, despite the Ninth Circuit's holding that Customs may impose a civil penalty in this case if the goods bore a counterfeit mark. Such a ruling would be inconsistent with the purpose of the statute and the law of the case.

Thus, the Court finds that the fine imposed on Able Time does not violate the Eighth Amendment.

## III. Remission

Able Time seeks judgment as a matter of law that Customs cannot impose a civil fine under 19 U.S.C. § 1526(f) when it fails to perfect a forfeiture, resulting in the seizure being remitted. Remission Motion at p. 7:14-17.

### A. Effect of the Remittance Statutes

Able Time argues that the "Secretary of Treasury has authority to remit, and when a forfeiture is remitted, the cause of forfeiture is release to the claimant." Remission Motion at p. 7:19-21. Able Time relies on 19 U.S.C. § 1618 (§ 618 of the Tariff Act of 1930, as amended) for this argument. According to the language of the statute, 19 U.S.C. § 1618 only applies if the Secretary of Treasury makes a finding that the "fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law," or "the existence of such mitigating circumstances as to justify the

8

remission or mitigation of such fine, penalty, or forfeiture . . ." There was no such finding here; thus, 19 U.S.C. § 1618 is not applicable.

Additionally, Able Time relies on the Act of 1797, the "Treatise on the Law of the Customs" published in 1887, and *Murray v. Arthur* (1876, Cir. Ct. S.D.N.Y.) 13 Blatchf 429, 17 F. Cas. 1045 No. 9956. Each of these authorities relied on the fact that the Secretary of Treasury made a finding that remission was appropriate because the seizure lacked good cause. Here, the watches were remitted because of a defect in the forfeiture proceeding. Additionally, the jury determined that the seizure was lawful. Thus, the sources relied on by Able Time do not support its position.

**B. Legislative History**

The legislative history does not address the specific issues before the Court, but it does establish that Section 1526(f) is a punitive, rather than revenue raising, provision designed to punish counterfeiters.

A 1996 Senate Report regarding Section 1526 states: "the bill strengthens the hand of businesses harmed by counterfeiters by updating existing statutes and providing stronger civil penalties against counterfeiters, including civil fines . . ." S. Rep. 104-177 at 2, R. Rep. No. 177, 104th Cong., 1st Sess. 1995, 1995 WL 709282. Section 1526(f) "has two primary purposes. First, it will provide a deterrent to counterfeiting in cases in which resources are not available to bring a criminal case. Second, it makes penalties related to counterfeit products at least as stringent as those penalties applied to counterfeits made in this country." *Id.*

In *Able Time*, 545 F.3d at 833, the Ninth Circuit reviewed the legislative history of Section 1526(f) and observed:

> The legislative history of the ACPA demonstrates that Congress intended to protect consumers who unwittingly purchase "counterfeit products" because such products "are rarely of the same quality as the genuine article," because consumers may blame the owner of the registered mark for their shoddy purchases, and because consumers may suffer harm when substandard products fail. . . .

9

> [A]pplying a civil penalty in the instant case will combat the very harm identified in the legislative history: it will protect consumers from being misled into purchasing generic watches that they mistakenly believe come from Tommy Hilfiger.

The Federal Circuit agreed, and concluded that Section 1526(f) is "punitive in nature." *Sakar Int'l, Inc. v. United States*, 516 F.3d 1340, 1349 (Fed. Cir. 2008). Thus, the Court finds that the legislative history does not prevent a civil penalty in this Action.

**C. Agency Interpretation**

Able Time argues that remittance moots a civil penalty because a successful forfeiture action is a prerequisite to a civil penalty action. In support of this argument, Able Time relies on a Customs Guideline, a Customs Bulletin, and the deposition testimony of a Customs paralegal. Pollack Decl. Exs. 426, 428; Joint Stipulation of Facts at ¶¶ 1, 2.

Able Time does not contend that the Customs Guideline was published for comment. The Customs Bulletin states that "[t]he statements made herein are not intended to create or confer any rights, privileges or benefits for any private person, but are intended merely for internal guidance." Pollack Decl. Ex. 428. Able Time also relies on the deposition testimony of Wenceslao Bantad, the paralegal specialist with Fines, Penalties and Forfeitures ("FP&F") who prepared a Notice of Penalty in this matter.

The Ninth Circuit found in this case that "[b]ecause the statutes at issue are not ambiguous, we decide this case without giving deference to the government agency." *Able Time*, 545F.3d at 835-836 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

The Court finds that the statute is unambiguous and the Court does not need to defer to government interpretations.

However, even if the Court found that the statutes were ambiguous, the Court finds that the Customs interpretations relied on by Able Time have not

created enforceable rights. To have the binding effect of law, agency publications must:

> (1) Prescribe substantive rules -- not interpretive rules, general statements of policy or rules of agency organization, procedure or practice -- and, (2) conform to certain procedural requirements. To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress.

*United States v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982); *see also River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1071 (9th Cir. 2010) (finding that an agency policy intended to provide guidance within the agency, not to establish rights in the public generally).

Able Time has not established that the Customs policies it relies on were intended to create substantive rights. Thus, Customs does not have an official interpretation of 19 U.S.C. § 1526(e) and (f) which precludes the Government from collecting a civil penalty in this Action.

At hearing, Able Time contended, in the first instance, that the Custom's Guideline and Bulletin are entitled to *Skidmore* deference, which applies if the agency's views "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift*, 323 U.S. 134, 140 (1944). Factors affecting the level of deference given to an agency's interpretation include "the degree of the agency's care, its consistency, formality, and relative expertness, and the persuasiveness of the agency's position." *Id.* at 228 (citations and footnotes omitted).

There is no evidence to support that Customs' views on 19 U.S.C. § 1526 constitute an "informed judgment" on which this Court "may properly resort for guidance." Accordingly, the Court finds that *Skidmore* deference is not applicable.

**IV. Unclean Hands**

Able Time contends that the affirmative defense of unclean hands applies because the Government acted contrary to its national policy by imposing a civil

penalty without first imposing a forfeiture. The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

To prevail on an unclean hands defense, the defendant must demonstrate that (1) the plaintiff's conduct is inequitable and (2) that the conduct relates to the subject matter of the claims. *Brother Records v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003) (citations and internal quotations omitted). Bad intent is the essence of the defense of unclean hands. *Wells Fargo & Co. v. Stagecoach Properties, Inc.*, 685 F.2d 302, 308 (9th Cir. 1982). The doctrine of unclean hands also bars a defendant with unclean hands from asserting an equitable defense. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841-42. (9th Cir. 2002).

The Court finds no evidence to support Able Time's affirmative defense of unclean hands. The Government did not act with bad intent when it imposed a civil penalty against Able Time.

IT IS SO ORDERED.

DATED: July 7__ , 2011          By_____
                                CONSUELO B. MARSHALL
                                UNITED STATES DISTRICT JUDGE